UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERSTATE CAPITAL CORPORATION )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL GRID USA SERVICE COMPANY, INC. )<br>And )<br>ICS CORPORATION )<br>    Defendants. )<br>) | Civil Action No. |

## COMPLAINT

The Plaintiff, Interstate Capital Corporation ("Interstate"), by and through its attorneys Sheehan Phinney Bass & Green, Professional Association, complains against the above-captioned Defendants, as follows:

### Preliminary Statement

This is an action seeking damages, attorneys' fees and costs associated with, and suffered by, Interstate due to the Defendants' brazen, intentional and bad faith violation of a) the parties' contract; b) the Uniform Commercial Code, Section 9-406 and c) M.G.L. 93A §11.  In summary, the Defendants improperly and deliberately misdirected payments of duly assigned accounts receivable and otherwise failed to pay past due and outstanding receivables that were due and owing to Interstate.

### Allegations Common to All Counts

**A. Parties, Venue and Jurisdiction**

1.    The Plaintiff, Interstate Capital Corporation, is a corporation organized pursuant to the laws of the state of New Mexico, with its principal place of business at 1255 Country Club Road, Santa Teresa, New Mexico.  Interstate provides factoring and financial services to small

and medium sized businesses in, among others, the manufacturing, apparel, staffing and transportation industries.  In June 2018, Interstate Capital became part of Triumph Business Capital, a wholly-owned subsidiary of Triumph Bancorp, forming one of the largest transportation factoring companies in North America.  Interstate has provided working capital for over 10,000 business owners and factors over $1 billion per year.  Interstate is, among other things, a member of the International Factoring Association and has an A+ rating by the Better Business Bureau.

   2. The Defendant, ICS Corporation is a Massachusetts corporation and has its principal place of business at 100 Business Park Drive, Unit 13, Tyngsboro, Massachusetts.  ICS provides electric motor energy savings and building management integration with motor control solutions.  ICS' mission is to provide energy savings to businesses of all sizes through installing more efficient motors and drives.

   3. National Grid USA Service Co. Inc. is a Massachusetts corporation and has a principal place of business at 40 Sylvan Road, Waltham, Massachusetts ("National Grid").  National Grid is an electricity and gas utility company.

   4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), as all of the Defendants reside in this judicial district.  This Court has <u>in personam</u> jurisdiction over this matter, as all of the Defendants reside in Massachusetts.

   5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(2), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of Massachusetts and a citizen or subject of a foreign state.

 **B.** **Factual Background**

   6. On or about February 1, 2017, ICS entered into a factoring agreement with

Interstate under which ICS "sells, transfers, conveys, assigns, and delivers to [Interstate] as absolute owner, . . . all of the right, title and interest of [ICS] in and to those certain accounts receivable arising from the sale of merchandise or the rendering of services by [ICS] in the ordinary course of ICS's business . . ." (the "Agreement"). See Agreement, a true and accurate copy of which is attached hereto and made part hereof, as Exhibit A, ¶ 1.

7. Relevant provisions of the Agreement state as follows:

A. "[t]he sale, assignment, transfer and conveyance contemplated by this Agreement (i) is a sale by [ICS] and a purchase by [Interstate], and is not security for any indebtedness or other obligation of [ICS] to [Interstate] . . .". See Agreement, Exhibit A, ¶ 1.

B. "[ICS] agrees, if so instructed by [Interstate], to notify the Account Debtor of the contemplated sale, to execute and deliver any document necessary to notify the Account Debtor of the assignment, and to procure, if requested, an acknowledgment and acceptance of the contemplated assignment from the Account Debtor". See Agreement, Exhibit A, ¶ 6.

C. "In order to carry out the intention of the parties hereto, [ICS] hereby irrevocably appoints [Interstate], or any person designated by [Interstate], as its attorney in fact with express authority to … (iv.) in [ICS'] name, demand, sue for, collect, and give releases for any and all monies due on or to become due on purchased Accounts . . .". See Agreement, Exhibit A, ¶ 10.

D. "The term 'default' as used in the Agreement shall mean the occurrence of any of the following events: . . . k. the interference by [ICS] with the assignment of its Accounts to [Interstate] by contacting any of [ICS'] Account Debtors which have been notified

of [ICS'] assignment of it's Accounts to [Interstate] and instructs any of those Account Debtors to redirect payments on the Purchased Accounts . . . to [ICS] or any third party". See Agreement, Exhibit A, ¶ 12(k).

8. On February 1, 2017, and pursuant to the Agreement, ICS executed a Notification of Assignment, a true and accurate copy of which is attached hereto, and made part hereof, at Exhibit B (the "Notice of Assignment").

9. The Notification of Assignment, states in relevant part:

> The purpose of this letter is to inform you that [ICS] ("Assignor") has assigned its accounts and contracts receivable to Interstate Capital Corporation ("ICC"). ICC is providing Assignor with capital that will enable it to service your account better and to take advantage of other growth opportunities.
>
> Pursuant to the assignment of its accounts and contracts receivable to ICC, Assignor and ICC hereby notify you to begin remitting payment on all of Assignor's accounts, now or hereafter existing, **exclusively** in accordance with the remittance instructions below. This notice shall also unconditionally authorize you to disclose to ICC all information relating to Assignor's accounts.
>
> **UNDER NO C1RCUMSTANCES SHOULD PAYMENT BE PROVIDED DIRECTLY TO THE ASSIGNOR.**
>
> These instructions shall become effective immediately upon your receipt of this letter and are irrevocable. These payment instructions and the provisions of this letter shall continue in force until your receipt of written notification of termination. Such notification must be signed by ICC and notarized. **PAYMENT TO ANYONE OTHER THAN ICC W|LL NOT CONSTIITUTE PAYMENT OF YOUR INDEBTEDINESS ON THE ACCOUNTS.**

10. The Notification of Assignment was sent to, and received by, National Grid on April 24, 2017. See National Grid electronic mail messaged dated April 24, 2017, a true and accurate copy of which is attached hereto and made part hereof at Exhibit C.

11. Between May 2017 and March, 2018, National Grid did indeed pay approximately ninety-eight (98) ICS invoices to Interstate.

12.     According to National Grid, on March 29, 2018, it changed the payment information on ICS' account after it received a form from ICS requesting the redirection of funds/payments.  See National Grid electronic mail messaged dated May 11, 2018 and attached ICS form requesting the redirection of funds/payments, a true and accurate copy of which is attached hereto and made part hereof at Exhibit D.

13.     National Grid has admitted that it improperly paid eleven (11) invoices in 3 payments totaling $105,785.50 directly to ICS in contravention, and breach of, the Agreement and the Notification of Assignment (the "Misdirected Funds").  See National Grid electronic mail messaged dated May 14, 2018, a true and accurate copy of which is attached hereto and made part hereof at Exhibit E.

14.     In addition to the Misdirected Funds, National Grid has also failed to pay Interstate for eleven (11) additional ICS invoices totaling $218,613.40, as summarized in Exhibit F, which is attached hereto and made part hereof.

15.     By way of further background, National Grid pays "Energy Initiative" rebates to ICS on behalf of ICS customers who install, and/or replace older equipment with, energy efficient motors, drives and other equipment.

16.     Typically, a customer will contact ICS with a project designed to make the customer's facility/operations more energy efficient via the installation of high efficiency motors, drives and/or other equipment (the "Proposed Project").  ICS provides a quote for the total cost of the Proposed Project to the customer.  The customer and/or ICS then obtain approval from National Grid, prior to the commencement of the Proposed Project, for a rebate on a portion of the total cost of the Proposed Project (the "Rebate").  Once the Proposed Project is completed, ICS invoices the customer for its share of the total cost of the Proposed Project (the "Customer

Payment") and ICS also invoices National Grid for the Rebate. Combined, the Customer Payment and the Rebate pay for the Proposed Project in full.

17. The eleven (11) invoices that ICS issued to National Grid and then sold to Interstate, but for which National Grid has not paid Interstate, are detailed as follows:

   A.   ICS issued Invoice 58294 in the amount of $23,200.00 to National Grid on February 27, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Barbour Corp. (the "Barbour Invoice"). On February 27, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 58294 to Interstate. Attached hereto as Exhibit G is a true and accurate copy of Invoice 58294 and the Memo of Sale of Invoice 58294 from ICS to Interstate (the "Barbour Project").

   B.   ICS issued Invoice 59027 in the amount of $10,400.00 to National Grid on December 29, 2017 for an approved Rebate on goods and services provided by ICS to its customer, Peabody Properties Inc. (the "Peabody Invoice"). On December 29, 2017, and pursuant to the Agreement, ICS sold/assigned Invoice 59027 to Interstate. Attached hereto as Exhibit H is a true and accurate copy of Invoice 59027 and the Memo of Sale of Invoice 59027 from ICS to Interstate (the "Peabody Project").

   C.   ICS issued Invoice 59108 in the amount of $12,600.00 to National Grid on December 7, 2017 for an approved Rebate on goods and services provided by ICS to its customer, Nypro Inc. (the "Nypro Invoice"). On December 8, 2017, and pursuant to the Agreement, ICS sold/assigned Invoice 59108 to Interstate. Attached hereto as Exhibit I is a true and accurate copy of Invoice 59108 and the Memo of Sale of Invoice 59108 from ICS to Interstate (the "Nypro Project").

D. ICS issued Invoice 59152 in the amount of $16,198.40.00 to National Grid on January 10, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Pexco, LLC (the "Pexco Invoice").  On January 11, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59152 to Interstate.  Attached hereto as <u>Exhibit J</u> is a true and accurate copy of Invoice 59152 and the Memo of Sale of Invoice 59152 from ICS to Interstate (the "Pexco Project").

E ICS issued Invoice 59157 in the amount of $15,050.00 to National Grid on January 31, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Dahlicious Lassi (the "Dahlicious Invoice").  On February 5, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59157 to Interstate.  Attached hereto as <u>Exhibit K</u> is a true and accurate copy of Invoice 59157 and the Memo of Sale of Invoice 59157 from ICS to Interstate (the "Dahlicious Project").

F. ICS issued Invoice 59255 in the amount of $92,395.00 to National Grid on February 27, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Phillips Electronics North America (the "Phillips Invoice").  On February 27, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59255 to Interstate.  Attached hereto as <u>Exhibit L</u> is a true and accurate copy of Invoice 59255 and the Memo of Sale of Invoice 59255from ICS to Interstate (the "Phillips Project").

G. ICS issued Invoice 59376 in the amount of $11,200.00 to National Grid on March 12, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Lawrence Valley Forum (the "Lawrence Invoice").  On March 14, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59376 to Interstate.  Attached hereto as <u>Exhibit M</u> is a

true and accurate copy of Invoice 59376 and the Memo of Sale of Invoice 59376 from ICS to Interstate (the "Lawrence Project").

   H. ICS issued Invoice 59377 in the amount of $15,000.00 to National Grid on March 12, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Haverhill Valley Forum (the "Haverhill Invoice"). On March 14, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59377 to Interstate. Attached hereto as <u>Exhibit N</u> is a true and accurate copy of Invoice 59377 and the Memo of Sale of Invoice 59377 from ICS to Interstate (the "Haverhill Project").

   I. ICS issued Invoice 59872 in the amount of $28,770.00 to National Grid on February 13, 2018 for an approved Rebate on goods and services provided by ICS to its customer, Phillips Electronics North America (the "Second Phillips Invoice"). On February 13, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 59872 to Interstate. Attached hereto as <u>Exhibit O</u> is a true and accurate copy of Invoice 59872 and the Memo of Sale of Invoice 59872 from ICS to Interstate (the "Second Phillips Project").

   J. ICS issued Invoice 508481 in the amount of $13,200.00 to National Grid on February 9, 2018 for an approved Rebate on goods and services provided by ICS to its customer, AIS, Inc. (the "AIS Invoice"). Pursuant to the Agreement, ICS sold/assigned Invoice 508481 to Interstate. Attached hereto as <u>Exhibit P</u> is a true and accurate copy of Invoice 508481 and the Memo of Sale of Invoice 508481 from ICS to Interstate (the "AIS Project").

   K. ICS issued Invoice 50483 in the amount of $4,200.00 to National Grid on February 9, 2018 for an approved Rebate on goods and services provided by ICS to its customer, AIS, Inc. (the "Second AIS Invoice"). On February 12, 2018, and pursuant to the Agreement, ICS sold/assigned Invoice 50483 to Interstate. Attached hereto as <u>Exhibit Q</u> is a true and

accurate copy of Invoice 50483 and the Memo of Sale of Invoice 50483 from ICS to Interstate (the "Second AIS Project").

(collectively, the Barbour Invoice, Peabody Invoice, Nypro Invoice, Pexco Invoice, Dahlicious Invoice, Phillips Invoice, Lawrence Invoice, Haverhill Invoice, Second Phillips Invoice, AIS Invoice and the Second AIS Invoice are the "Unpaid Invoices").

(collectively, the Barbour Project, Peabody Project, Nypro Project, Pexco Project, Dahlicious Project, Phillips Project, Lawrence Project, Haverhill Project, Second Phillips Project, AIS Project and the Second AIS Project are the "Projects").

18. On or about August 21, 2018, Interstate made demand upon National Grid for the payment of the Misdirected Funds and the Unpaid Invoices. National Grid failed, or otherwise refused, to pay the Misdirected Funds and/or the Unpaid Invoices to Interstate.

### Count I
### Breach of Assignment/Contract And U.C.C. 9-406 – National Grid

19. Interstate repeats and realleges the allegations set forth in Paragraphs 1 through and including 18 of this Complaint, as if fully set forth herein.

20. U.C.C. 9-406 states, in relevant part:

> **(a) [Discharge of account debtor; effect of notification.]**
>
> Subject to subsections (b) through (i), an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

21. National Grid was served with, and acknowledged receipt of, the Notification of Assignment on April 24, 2017.

{S1229745.1}    9

22. National Grid knew of ICS' assignment of accounts receivable to Interstate and its obligation to remit payment on those accounts receivable to Interstate. Indeed, National Grid paid approximately ninety-eight ICS invoices to Interstate pursuant to the Notification of Assignment between May, 2017 and March 2018.

23. National Grid's payment of the Misdirected Funds to ICS was in contravention of, and a breach of, the Agreement, the Notification of Assignment and UCC 9-406.

24. National Grid's payment of the Misdirected Funds to ICS does not extinguish or satisfy, in any way, its obligations to Interstate under the Notification of Assignment and/or U.C.C. 9-406.

25. Interstate has been harmed, and has suffered damages as a result of, National Grid's breach of the Agreement, the Notification of Assignment and/or UCC 9-406.

26. Interstate has been harmed, and has suffered damages as a result of, National Grid's failure and/or refusal to pay the Misdirected Funds to Interstate despite demand.

WHEREFORE, Interstate respectfully requests judgment against National Grid in the amount of $105,785.50.

### Count II
### Breach of Contract – Unpaid Invoices – National Grid

27. The Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 26 of this Complaint, as if fully set forth herein.

28. Pursuant to the Agreement, Interstate may compromise, prosecute, or defend any action, claim, or proceeding relating to a purchased Account.  <u>See</u> Agreement, Exhibit A, ¶ 10.

29. ICS provided services and/or goods on the Projects and issued the Unpaid Invoices to National Grid.

30. ICS sold the Unpaid Invoices to Interstate pursuant to the Agreement and the Memos of Sale.

31. The Unpaid Invoices each specifically state and inform National Grid of the following:

> This invoice has been assigned to and must be payable to Interstate Capital Corporation P.O. Box 915183 Dallas, TX 75391-5183
> Any claims or offset must be reported immediately to (800) 422-5995
> Payment to any other party does not constitute payment.

32. National Grid has failed and/or otherwise refused to pay the Unpaid Invoices to Interstate.

33. National Grid's failure and/or refusal to pay the Unpaid Invoices has caused harm and/or has otherwise damaged Interstate.

WHEREFORE, Interstate respectfully requests judgment against National Grid in the amount of $218,613.40.

### Count III
### Breach of Contract - ICS

34. The Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 33 of this Complaint, as if fully set forth herein.

35. Pursuant to the Agreement, ICS was prohibited from interfering with the assignment of its accounts to Interstate by contacting any of ICS' Account Debtors which had

been notified of ICS' assignment of its accounts to Interstate and instructing any of those account debtors to redirect payments on the accounts.

36. Pursuant to the Agreement, if ICS received a payment on, or for, an assigned account receivable, ICS was under the obligation to immediately notify Interstate of such payment and to immediately remit such payment to Interstate.

37. ICS breached the Agreement by instructing National Grid to pay ICS rather than Interstate in March 2018.

38. ICS breached the Agreement when it received the Misdirected Funds and failed or refused to a) notify Interstate of its receipt of the Misdirected Funds; and/or b) remit the Misdirected Funds to Interstate.

39. ICS' breach of the Agreement has caused harm and/or has otherwise damaged Interstate.

WHEREFORE, Interstate respectfully requests judgment against ICS in the amount of $105,785.50.

## Count IV
## Violation of Consumer Protection Act M.G.L. 93A §11 - ICS

40. The Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

41. M.G.L. 93A §11 states in relevant part that "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice" may bring a claim under the statute.

42. Interstate, ICS and National Grid all engage in business and/or commerce.

43. Pursuant to the Agreement, ICS was prohibited from interfering with the assignment of its accounts to Interstate by contacting any of ICS' Account Debtors which had been notified of ICS' assignment of its accounts to Interstate and instructing any of those account debtors to redirect payments on the accounts.

44. Pursuant to the Agreement, if ICS received a payment on, or for, an assigned account receivable, ICS was under the obligation to immediately notify Interstate of such payment and to immediately remit such payment to Interstate.

45. ICS purposefully, willfully and/or fraudulently instructed National Grid to pay ICS rather than Interstate.

46. ICS purposefully, willfully and/or fraudulently failed or refused to a) notify Interstate of its receipt of the Misdirected Funds; and/or b) remit the Misdirected Funds to Interstate.

47. Instead, ICS' purposefully, willfully an fraudulently used the Misdirected Funds for its own financial purposes and gain.

48. ICS' purposeful and willful acts constitute theft and/or fraud upon Interstate.

49. ICS' purposefully and willfully schemed to misdirect funds due to Interstate to itself so that ICS could reap a financial windfall to the detriment of Interstate.

50. ICS knew its actions would harm Interstate and in fact, ICS' actions did harm Interstate.

WHEREFORE, Interstate respectfully requests judgment against ICS in the treble amount of damages awarded by this Court plus its attorneys' fees.

**The Plaintiff hereby gives notice that it intends to amend this Complaint to conform to the evidence adduced in discovery upon appropriate notice to the Court and parties.**

WHEREFORE, Interstate respectfully requests that this Court:

A. Award Interstate its damages against National Grid on Count I of the Complaint;

B. Award Interstate its damages against National Grid on Count II of the Complaint;

C. Award Interstate its damages against ICS on Count III of the Complaint;

D. Award Interstate treble damages plus attorneys' fees against ICS on Count IV of the Complaint; and

E. Grant such other and further relief as the Court deems necessary and just.

        Respectfully submitted,

        **INTERSTATE CAPITAL CORPORATION**
        By Its Attorneys,

        **SHEEHAN PHINNEY BASS & GREEN, P.A.**

Dated: October 4, 2018    By:   /s/ James S. LaMontagne
        James S. LaMontagne, BBO # 631022
        1000 Elm Street, P.O. Box 3701
        Manchester, NH 03101
        (603) 627-8102
        jlamontagne@sheehan.com